TEXAS & P. RY. CO. v. TIMBERLAKE.
(No. 661.)

(Court of Civil Appeals of Texas. El Paso. Feb. 8, 1917.)

1. EVIDENCE ☞472(4) — OPINION — OPINION ON MIXED QUESTION OF LAW AND FACT.

In an action for damages to live stock in transit, the shipper's testimony that he saw the cars in which the cattle were loaded, that they had very little bedding, that he objected to shipping the cattle in such condition, and that he knew from his experience how much it took to satisfactorily and adequately bed cars to ship cattle in, stating that it took 2½ inches of sand and cinders, and that in his experience the cattle that were injured and those that were dead would not have been injured had the cars been properly bedded, was not inadmissible as an expression of opinion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2189.]

2. EVIDENCE ☞489 — OPINION — QUALIFICATION OF WITNESS.

In an action for damage to bulls in transit, where the shipper's testimony showed that he was apparently qualified to state the market value of the crippled bulls on their arrival at a market, and his qualification was not challenged, he was properly allowed to state the market value of the crippled bulls at the market, since a witness need not state how he has acquired a knowledge of values unless the knowledge be challenged.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2274.]

3. EVIDENCE ☞472(11) — OPINION — MIXED QUESTION OF LAW AND FACT.

In an action for injury to bulls in transit, the shipper's testimony that from his experience as a cowman and shipper he believed not having any bedding in the cars and standing on hard floors caused the cattle's feet to swell, etc., was not inadmissible as an opinion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2195.]

Appeal from El Paso County Court; Adrian Pool, Judge.

Suit by Edgar Timberlake against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Judgment affirmed.

Russell & Gillett, of El Paso, for appellant. Hudspeth, Dale & Harper, of El Paso, for appellee.

WALTHALL, J. This is a suit brought by Edgar Timberlake, appellee, against the Texas & Pacific Railway Company, to recover damages alleged to have been sustained in a shipment of 119 bulls from Ft. Worth, Tex., to El Paso, Tex. Appellee assigned two grounds of negligence: First, that the bulls were loaded by appellant, over his protest, into three cars that were not properly prepared to receive said cattle, the cars being wet and muddy and unfit for use; second, that the train in which the bulls were carried stalled several times on appellant's line of road in the vicinity of Cisco, and that on said account the train was violently and needlessly jerked, jolted, and shunted without regard to the safety of said bulls and with a reckless disregard of the consequences to the cattle. Appellee alleged that, as a result of the alleged condition of the cars and the handling of the train, the bulls were thrown down and about in said cars and against one another and injured, with the result that 2 of the bulls died of their injuries and 15 of said bulls were badly cut, bruised, scratched, and injured and their values depreciated. Appellant pleaded the provisions of a shipping contract under which said cattle were shipped, the provisions of which we need not state; denied the acts of negligence charged; alleged that immediately before said cattle were loaded into the cars for shipment, they had been dipped in an arsenic solution which would likely result in some of them becoming sick and getting down in the cars and dying, and charged appellants with negligence in loading and transporting said cattle under said conditions; alleged that said cattle were in a weak and sick condition when delivered for shipment as a result said dipping, and were overloaded into the cars by appellant and that, if any of them died or were bruised and injured in transportation, it was caused by the said dipping and overloading, and not by the rough handling charged. The jury found for the appellee and assessed his damages at $600 for which the court rendered judgment.

The court permitted Timberlake to state as evidence that the cars in which the cattle were shipped had not been properly bedded,

---

and appellant assigns this as error, on the ground that the issue of a proper bedding was one of the issues of negligence charged, and was one of the issues in the case to be determined by the jury, uninfluenced by the statement or conclusion by the witness. Appellant insists that the statement of the witness involves a mixed question of law and fact. The statement of the witness was:

"I saw the cars in which these cattle were loaded at Ft. Worth. Two of the cars had very little bedding in them, and one not at all. The two had a little wet sand in them, probably a quarter of an inch. They put in a little prairie hay in the cars, but it was very light; they refused to bed them any more. I told the man on the dock that I would like to have had an opportunity to have better bedding in the cars; he says: 'We have them right here to load them, and we are going to load them.' I said: 'I certainly object to shipping them in this condition.' One car had no bedding at all. They put in a little prairie hay in that car after I protested at not wanting to load the cattle at all in the condition of the cars. I know from my experience as a cowman and shipper what it takes to satisfactorily and adequately bed cars to ship cattle in. It requires, I should say, 2½ inches of sand and cinders. Any kind of sand will do. The purpose of the bedding is to keep the cattle from being knocked down; to have something to support themselves. I do not think they could support themselves without bedding and in cases where they had much handling. Neither of these three cars were properly bedded. In my experience as a cowman and shipper of cattle, the 15 head that were injured and the 2 that were dead would not have been injured as they were if the cars had been properly bedded."

[1] The evidence was not the expression of an opinion on a mixed question of law and fact. In H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, used by appellant in its brief, the witness was asked: "What is a reasonable time within which to transport a train of cattle from Llano to Fairfax, when they are transported with ordinary care and diligence."

The Supreme Court said that:

"In answering, if he answered intelligently, the witness must have determined for himself what would constitute ordinary care, and then have deduced, from a consideration of all the elements that would, in his opinion, enter into the question of the time reasonably necessary for the transportation in the exercise of such care, a conclusion as to what that time should be."

In that case, the elements of ordinary care and a reasonable time were involved in the question. It was not held as error in that case that the witness was permitted to give his opinion as to what would be a reasonable time in which to carry the cattle from Llano to Fairfax, but the vice in the question was to permit the witness to embrace in his statement of reasonable time the ultimate conclusion as to negligence vel non or ordinary care. In that case, the court said:

"It is sometimes the case that witnesses are permitted to state their opinions so as to involve the very conclusion the jury are to draw in giving their verdict."

In the instant case, if the jury should find that appellant was guilty of negligence in bedding the cars, there was yet an element of fact upon which the jury must have information; was the negligence the direct or proximate cause of the injury to the cattle? could the appellant have reasonably anticipated from the lack of bedding, or from the way the cars were bedded, that injury to the cattle would probably result? To furnish to the jury that information, the witness was permitted, after stating the purpose of bedding cars, and the way the cars were bedded, and that the cattle could not support themselves without proper bedding, and what would be proper bedding for cars, that in his opinion the injuries to the cattle would not have occurred if the cars had been properly bedded. The statement of the witness was only an expression of opinion on supposable facts. The opinion is not on the facts as the witness stated they were, and, only inferentially involved the facts from which the jury were to draw a conclusion of proximate cause.

[2] There is no merit in appellant's second and third assignment, complaining of the action of the court in permitting the witness Timberlake to state the market value of the crippled bulls upon their arrival in El Paso, as complained of the second assignment or the value of the cattle at Deming, in the third, on the ground that the witness was not shown to be qualified to answer questions as to market value at El Paso. The witness stated:

"There was a market value for bulls of that character here in El Paso. I was acquainted with what that market value was. * * * I did not find a sale for these cattle in El Paso. These 16 head of bulls did not have a market value in El Paso in the condition in which they were at that time. * * * I know what those 16 head were actually worth in El Paso at the time in the condition in which they actually did arrive."

The witness then stated the values. The above shows that the witness was apparently qualified to state values. The record does not show that appellant further tested the qualification of the witness. A witness need not state how he has acquired a knowledge of values unless that knowledge be challenged. The court, in the charge, applied the El Paso values, which the proof shows to be less than the Deming values.

[3] Appellant's fourth ground of error is directed to the admission in evidence of the following, as being an opinion of a witness on a mixed question of law and fact:

"From my experience as a cowman and shipper, I believe not having any bedding in those cars and standing on hard floors caused their feet to swell. In my opinion, from my experience as a cowman and shipper of cattle, the 15 head that were injured and the 2 that were dead would not have been injured as they were if the cars had been properly bedded."

There was no error in admitting the evidence. Our views on a similar objection are expressed under a previous assignment. Also the record shows that under cross-examination by appellant, the witness stated:

"Some of the cattle at Baird had big knuckles, feet bruised up. Their knuckles swell when they have no bedding in the cars. I have never heard of the arsenic dip causing swollen knuckles, unless they swallow it, and then they die immediately. * * * There were three or four cattle bruised bad enough at Baird to have swollen ankles. I know they had their ankles bruised by the way they walked."

We have carefully examined the evidence, and find that the verdict of the jury is well sustained in their conclusion that the injuries to the cattle were the result of improper bedding and rough handling, rather than resulting from the arsenic dip as claimed by appellant in the fifth and seventh grounds of error.

The assignments are overruled.

Finding no reversible error, the case is affirmed.